UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

UNITED STATES OF AMERICA,

      Plaintiff,                                Case No. 1:25-cr-88

v.                                                Hon. Paul L. Maloney
                                                        United States District Judge

JAMES DONALD VANCE, JR.,

      Defendant.
_____/

**DEFENDANT'S RESPONSE TO
GOVERNMENT'S SENTENCING MEMORANDUM**

James Donald Vance, Jr., through his attorney, Helen C. Nieuwenhuis of the Office of the Federal Public Defender, respectfully submits this memorandum in response to the Government's Sentencing Memorandum.

**I.    Sentencing Factors Under 18 U.S.C. § 3553(a) Support a Lenient Sentence**

The government's position substantially overstates both the danger posed by Mr. Vance and the need for incarceration. Mr. Vance is a 67-year-old first-time offender with serious physical and mental health issues. His statements, while unacceptable, were rhetoric—not plans—and he never took any step to harm anyone. He cooperated immediately, consented to searches, and admitted his conduct. Except for a minor misunderstanding involving an online support group, he has been fully compliant on pretrial release. He has started therapy to address root cause of his behavior and has also

begun karate training to manage stress and anger constructively. These are meaningful signs of rehabilitation.

His age, lack of criminal record, and demonstrated remorse place him among the least likely to reoffend. Empirical data confirm that older first-time offenders present the lowest recidivism risk—just 11.3% for offenders over 60. *See* U.S. Sentencing Commission, *The Effects of Aging on Recidivism Among Federal Offenders* (2022). A custodial sentence would serve little deterrent or protective value; probation with continued treatment and supervision better advances the purposes of § 3553(a) by addressing both rehabilitation and public safety.

## II. Mr. Vance Qualifies for the Zero-Point Reduction

Section 4C1.1 was adopted to recognize that first-time offenders, though guilty of criminal conduct, generally pose minimal danger and have exceptionally low recidivism rates. Disqualifying Mr. Vance—a first-time, elderly defendant who accepted responsibility, sought treatment, and has complied with supervision—would contradict the purpose of the amendment and the empirical data underlying it.

### a. Mr. Vance's Online Statements Were Not "Credible Threats of Violence"

A "credible threat" is a believable communication of intent to inflict harm, supported by circumstances indicating realistic possibility that violence will follow. *United States v. Roberson*, 2024 WL 2154285, at *4 (6th Cir. May 14, 2024); *United States v. Pineda-Duarte*, 933 F.3d 519, 522 (6th Cir. 2019).

In arguing that Mr. Vance's statements are "credible threats," the government focuses primarily on his on-line statements. It argues they are credible because they are

direct and specific and demonstrate consistent desire to kill. (ECF 26, Presentence Report (PSR), PageID.101-103). However, courts have held that credibility of the statements should be judged based on the entire context, including means, motive, capability, and prior criminal history. *See United States v. Mabery*, 2024 WL 4565573, at *5 (6th Cir. Oct. 24, 2024)(considering context, such as motive, plan to lure the victim out so he can beat her up, and prior assault conviction); *United States v. Dentmond*, No. 23-1558, 2024 WL 2186324, at *3-4 (6th Cir. May 15, 2024)(considering details of traffic stop and defendant's prior criminal history); *United States v. Johnson*, 64 F.4th 1348, 1352 (D.C. Cir. 2023) (court reviewed "contextual evidence" including that defendant was armed, had prior criminal history, and motive); *United States v. Yang*, No. CR 23-100 (JDB), 2024 WL 519962, at *4 (D.D.C. Feb. 9, 2024) ("Courts properly look to 'contextual evidence' to determine whether a threat is credible"); *United States v. Bauer*, 714 F. Supp. 3d 1, 6 (D.D.C. 2024) (same); *United States v. Kelly*, No. 1:21-CR-708-RCL-1, 2024 WL 756642, at *7 (D.D.C. Feb. 23, 2024) (same).

The government argues that because Mr. Vance pled guilty, he cannot deny the "credibility" of his threats. (ECF 26, Government's Sentencing Memorandum, PageID.106). That is not so. The plea establishes that the statements were "true threats" under the First Amendment, not that they were "credible threats of violence" for sentencing purposes. The latter term in § 4C1.1(a)(3) asks whether violence was realistically possible—a distinct factual inquiry.

Viewed in context, Mr. Vance's posts—though disturbing—were isolated online expressions of anger and frustration, unaccompanied by plans, preparation, or proximity to

3

any target.  He had no history of violence, no access to his supposed "targets," and no means to act.  Law enforcement had previously reviewed similar posts without prosecution, reflecting that they were seen as bluster rather than operational threats.  For a 67-year-old defendant with no prior criminal history, the objective risk of actual harm was negligible.

Moreover, the government's cited cases largely interpret § 2D1.1(b)(2)—an enhancement for credible threats of violence in narcotics offenses—where threats were used to intimidate rivals or protect drug activity.  Those contexts involve operational, not expressive, threats.  Mr. Vance's statements, though criminally punishable as "true threats," arose from political frustration and mental instability—not intent or ability to cause harm.  While his words crossed the constitutional line, the surrounding context demonstrates expressive, not instrumental, intent.

### b.  Mr. Vance Did Not Possess a Firearm "in Connection with" the Offense

The firearm disqualifier under § 4C1.1(a)(7) applies only when a firearm is possessed *in connection with* the offense—meaning it facilitated, or had a purpose related to the criminal conduct.  The legally owned firearms discovered months after the posts were not used, accessed, or employed in any way related to the offense.

The government relies on a single photograph accompanying one post, showing a firearm with the caption: "Anti-MAGA tool. And yes, that's my gun."  This post was made on February 17, 2025—nearly three weeks before the first alleged threat on March 7, 2025, and more than eleven weeks before firearms were found in Mr. Vance's residence.  This temporal separation underscores the absence of any connection between the firearm and the offense.

4

Moreover, merely posting a photograph as part of expressive online speech does not constitute possession *in connection with* the offense. The guideline requires *functional*, not *symbolic*, use of a firearm. The photograph was part of the expressive conduct forming the offense; it did not facilitate or further it. To hold otherwise would improperly transform symbolic online expression into a per se firearm enhancement—contrary to both the text and intent of § 4C1.1(a)(7).

### III. Conclusion

A sentence of probation with continued mental health treatment would best satisfy the purposes of § 3553(a), balancing deterrence, public protection, and rehabilitation. In the alternative, a substantial downward variance is warranted given Mr. Vance's history, characteristics, and sustained progress toward rehabilitation.

Respectfully submitted,

SEAN R. TILTON
Federal Public Defender

Dated: November 10, 2025

/s/ Helen C. Nieuwenhuis
HELEN C. NIEUWENHUIS
First Assistant Federal Public Defender
50 Louis, NW, Ste. 300
Grand Rapids Michigan 49503
(616) 742-7420

JASNA TOSIC
Research & Writing Specialist